SCHOTT, Chief Judge.
This is an appeal from a judgment of October 14,1993, adjudging appellant mentally ill and committing him to Southeast Louisiana Hospital (SLH). The principal issue is whether the evidence was sufficient to support the judgment.
Initially we questioned whether this appeal should be dismissed as moot. Appellee, State of Louisiana, Department of Health and Hospitals, Office of Mental Health, attached to its brief an exhibit showing that appellant was conditionally discharged from SLH on January 7,1994. This prompted the filing of a motion by appellant to strike ap-pellee’s brief because the exhibit was not a part of the appellate record. We denied this motion not because the document is relevant to the merits of the appeal, but because it suggested that the appeal is moot. Consequently, we ordered appellant to show cause why the appeal should not be dismissed.
The judgment on appeal orders appellant to be confined until he is conditionally released. Since he was conditionally released, the judgment would seem to have no further effect. However, appellant, in response to our rule to show cause, filed in the record a copy of the conditional discharge issued by SLH showing that appellant must take prescribed medication and must keep scheduled appointments at the mental health clinic. Because these conditions are onerous and ultimately flow from the judgment on appeal, that judgment is not moot and is not subject to dismissal on that ground. State v. A C., 543 So.2d 133 (La.App. 2nd Cir.1988).
Appellant was brought to Charity Hospital under an Order for Protective Custody sought by family members. According to his daughter, he had become non-compliant with his psychotropic medication, exhibited irrational and delusional behavior, had become verbally assaultive toward both family members and strangers, and had been eating poorly. The Coroner’s Emergency Certificate was issued and a petition for judicial commitment was filed by appellee. After a hearing, the court ordered appellant committed.
LSA-R.S. 28:55(E)(1) provides that if the court finds by clear and convincing evidence that the subject is dangerous to self or others or is gravely disabled as a result of mental illness it shall render a judgment of commitment. A person is “gravely disabled” if he is unable to provide for his own basic physical needs, such as essential food, clothing, medical care, and shelter, as a result of serious mental illness and is unable to survive safely in freedom or protect himself from serious harm. R.S. 28:2(10).
*1304 Appellant contends that the evidence was insufficient as a matter of law to support the commitment because it fell short of being clear and convincing that he was disabled. Furthermore, he argues that the evidence showing that he was unable to provide for his basic needs and survive in freedom was for the most part inadmissible hearsay statements attributed to appellant’s relatives by the testifying physicians.
In order to consider these arguments, a summary of the evidence is in order. It consisted primarily of the testimony of Dr. William Super, a psychiatrist, Dr. Richard F. Kutner, and appellant himself.
Dr Super testified as follows: He examined appellant on October 11, 1993. He was already acquainted with appellant from a number of prior occasions when he was hospitalized including a previous commitment of appellant which took place in May 1993 and from the initial examination for the current admission which Super conducted as assistant to the coroner on September 17, 1993. He was given a history of loud talking, paranoid, religiosity, poor judgment and no insight from which Super concluded he was gravely disabled. Based on his examination of appellant Super found that appellant was having delusions of grandiosity, persecution, religiosity, impaired judgment, and lack of insight. He diagnosed a psychosis, paranoid schizophrenia, which he classified as a serious mental disorder. He discussed with appellant the need for medication, but he was adamant that he would not take it.
Asked about delusional behavior on appellant’s part, Super stated that he continued to be paranoid even about Super himself, accusing Super of malicious motives and persecuting him. In addition, Super found that appellant had grandiose religious delusions about being a prophet. Asked whether appellant could provide for his own needs and survive safely in freedom, Super referred to the history furnished by appellant’s relatives that he lived on the streets preaching and attacking drug dealers in the housing projects and that he turned up at his sister’s house on September 15 when he was manic and verbally threatening to his sister’s children prompting her to have him arrested. Super thought that while appellant might find food and have his clothes washed periodically his thought disorder which led him to such bizarre behavior demonstrated a grave disability and would prevent him from surviving safely in our society. Super stated that without forced medication he would regress to a more forward psychotic state and get into difficulties and harm.
Dr. Kutner was appellant’s treating physician from the time of his current admission to Charity Hospital on September 18 when he was brought there by the police. He had last been discharged from a psychiatric facility in July 1993. At that time he was to take prescribed medications, but he stated on discharge that he was not going to do so. Upon being admitted currently, he was forced to take medication with the result that he became more cooperative, less verbally assaul-tive, and was eating regularly. Nonetheless, he is still delusional, paranoid, refusing medical treatment, grandiose, easily angered, and has impaired judgments. He is suffering from a serious mental illness which Kutner classifies as a combination of schizophrenia and mood disorder. Asked whether he can survive safely in freedom and provide for his own basic needs, Jutner answered, “No. That’s highly questionable. I can’t say that I would feel comfortable in releasing [him] into freedom.”
We summarize appellant’s own testimony as follows: He is forty-six years old and stayed with his mother from time to time until his admission to Charity Hospital. At other times he stays in a hotel or by the river. He receives Social Security income of $675 per month. He was eating regularly. He was preaching Christianity to anyone who would listen including drug pushers, but he never got into any trouble for doing this and was never hurt while he was on the street. On cross examination he admitted that he would not allow the physicians to give him a physical examination because he didn’t need the help of any physician. He claimed he *1305 was a prophet and he often sleeps out on the streets with the homeless.
We have concluded that this evidence was clear and convincing proof of the elements required to support appellant’s commitment. The physicians unequivocally testified that he is suffering from mental illness. This mental illness causes appellant to be delusional, paranoid, grandiose, and uncooperative unless the illness is controlled by medication. He will not voluntarily take his medication. If a person is unable to provide for his own essential medical care, he is gravely disabled according to R.S. 28:2(10). Furthermore, the physicians established that he cannot survive safely in freedom because he will not take his medication voluntarily and becomes delusional and paranoid, living with the homeless on the streets and forcing his ideas on those he encounters by preaching to them in his assumed role as a preacher. No element of proof depended on hearsay testimony and the reports made to the physicians by the relatives were admissible for the purpose of medical diagnosis pursuant to C.E. art. 803(4). Dr. Super had personal knowledge about appellant’s condition not merely from the history furnished by his relatives, but from his personal knowledge of appellant’s previous commitment and hospitalizations. Dr. Kutner likewise had the benefit of appellant’s previous medical history. The effect of the present commitment is to get appellant on a regular regimen of medication. Dr. Kutner testified that on a previous occasion when appellant was hospitalized in 1987 and forced to take medication he did well after his release for three years. Both physicians were firm in their opinion that without getting on medication appellant’s prognosis would be a continued deteriorating course.
The judgment appealed from is affirmed.

AFFIRMED.